**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **RICK SHAFER,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff(s),*<br><br>v.<br><br>**TOYOTA OF BOARDMAN,**<br><br>*Defendant(s).* | Case No. 4:25-cv-00941-BMB<br><br>Judge Bridget Meehan Brennan |

**PLAINTIFF'S REPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Rick Shafer ("Plaintiff") hereby submits his response in opposition to Defendant Toyota of Boardman's ("Defendant") Motion for Judgment on the Pleadings (the "Motion"), ECF No. 13, and implores this Court to deny this Motion for the reasons stated herein.

## I. INTRODUCTION

On May 8, 2025, Plaintiff filed his Class Action Complaint against Defendant for violating the national Do-Not-Call Registry ("DNCR") and internal do-not-call ("IDNC") provisions of the Telephone Consumer Protection Act ("TCPA"). *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. §§ 64.1200(c)(2), (d). These violations are obvious—Plaintiff was registered on the DNCR and still received unwanted telemarketing messages from Defendant. In response, he opted out but continued to receive these messages from Defendant in violation of the TCPA, thereby prompting Plaintiff to bring the instant class action. *See generally* Compl., ECF No. 1.

In its Motion, Defendant tries to dupe this Court into believing that the messages on the face of the Complaint are mere offers to buy Plaintiff's car. *See* Mot. at 3. The screenshots provided in the Complaint, however, tell a different story. At the bottom of the very first message Plaintiff

received from Defendant, Defendant says, "Curious if you would consider upgrading[.]" Compl. at ¶ 12. These words are pivotal—they suggest that Defendant solicited Plaintiff to trade in his Camry to purchase a newer, better vehicle. The full text of this message confirms that Defendant asked Plaintiff, "**Curious if you would consider upgrading to something newer**." Defendant further confirmed, "I can exchange most of the information via text if that's easier for you." This colors every message Plaintiff received from Defendant and renders Defendant's messages unlike the many authorities cited in Defendant's Motion. To pretend that this text does not exist is dishonest.

Defendant cannot point to a single authority for the proposition that a message is not a telephone solicitation if it contains an offer to buy coupled with an attempt to sell a newer, more expensive product. It is more than plausible at this stage that the messages were sent for telemarketing purposes. Defendant's Motion should be denied.

## II. STATEMENT OF FACTS

### A. The Allegations in the Complaint Establish that Defendant's Text Messages Were Sent for Telemarketing Purposes.

Plaintiff's Complaint alleges that Defendant violated the DNCR and IDNC provisions of the TCPA by sending telemarketing text messages to his 1491 Number and to the putative class members. *See generally* Compl., ECF No. 1; *see* 47 U.S.C. § 227(c)(5); 47 C.F.R. §§ 64.1200(c)(2), (d). These messages constitute telemarketing because they encouraged the future purchase or investment in Defendant's property, goods, or services—i.e., Defendant's automobile sales. *Id.* at ¶ 22. On information and belief, Defendant sought a financial benefit from the telemarketing messages it placed to Plaintiff and the putative class members, as it attempted to derive business from these messages. *Id.* at ¶ 37.

Plaintiff received the first telemarketing message from Defendant on October 29, 2024 (the "October 29 Message"). *Id.* at ¶ 12. In it, Defendant's Sales Manager Jason expressed interest in Plaintiff's used Camry, which "is always great for us to carry[,]" and asked if Plaintiff "would consider upgrading[.]" *Id.*




*Id.* at ¶ 12 (red emphasis added). In response, Plaintiff said, "Do not call or text me[.]" *Id.* Defendant acknowledged this message with an emoji. *Id.*

Despite this clear opt-out, Defendant sent another telemarketing message on November 14, 2024:

> Hello Richard, this is Jason Albanese with Toyota of Boardman. May I communicate with you via text? Reply YES to confirm, or reply STOP at anytime to end. Msg & data rates may apply

*Id.* at ¶ 15 [hereinafter November 14 Message]. Plaintiff responded, "Stop," and received a confirmation that he successfully "opted out of texting." *Id.*

Finally, Plaintiff received yet another telemarketing message on January 30, 2025, containing the following text:

> Hey Richard, this is Jay from Toyota of Boardman. Let me know if you have any availability for a quick phone call regarding your 2018 Camry.

*Id.* at ¶ 17.

Plaintiff registered his 1491 Number on the DNCR on October 19, 2025, to avoid receiving unsolicited telemarketing calls and texts. *Id.* at ¶ 34. He had no existing business relationship with Defendant and never provided Defendant with his express written consent to be contacted. *Id.* at ¶¶ 28–31.

These facts strongly suggest that Defendant fails to ensure that requests to opt-out of future communications are honored within a reasonable time, to maintain a master opt-out list, and/or to maintain internal policies to sufficiently honor the opt-out requests made by Plaintiff and the Class Members. *Id.* at ¶¶ 18–20. Upon information and belief, Defendant does not have a written policy for maintaining an internal do not call list and does not inform or train its personnel engaged in telemarketing in the existence and use of any internal do not call list. *Id.* at ¶¶ 24–25.

### B. The Full Text of the October 29 Message Shows That Defendant Sent the Messages for Telemarketing Purposes.

The October 29 Message, the full text of which is incorporated by reference, reads as follows:




## III. LEGAL STANDARD

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed[,] but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings . . . generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)).

To survive a Rule 12(b)(6) motion to dismiss, Rule 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Supreme Court has expanded upon this standard, explaining that it "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Indeed,

the purpose of the complaint is simply "to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests[.]'" *Id.* (quoting *Conley v. Gibson*, 255 U.S. 41, 47 (1957)).

To determine whether these requirements are satisfied on a motion to dismiss, the Supreme Court put forth a two-pronged analysis. First, the court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

On a motion for judgment on the pleadings, and likewise on a Rule 12(b)(6) motion to dismiss, "[t]he court 'consider[s] the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). These documents may be considered on a Rule 12(c) or 12(b)(6) motion without converting it into a Rule 56 motion for summary judgment. *See Coley v. Lucas Cnty., Ohio*, No. 3:09-CV-00008, 2014 WL 273194, at *3 n.3 (N.D. Ohio Jan. 23, 2014) (citing *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 924 (N.D. Ohio 2009)); *cf.* Fed. R. Civ. P. 12(d).

## IV. THIS COURT SHOULD DENY DEFENDANT'S MOTION BECAUSE THE TEXT MESSAGES WERE SENT TO ENCOURAGE PLAINTIFF TO PURCHASE AN UPGRADED VEHICLE AND ARE THEREFORE TELEPHONE SOLICITATIONS.

Defendant's Motion is frivolous—an honest read of the October 29 Message reveals as much. Both the DNCR and IDNC provisions of the TCPA require the messages at issue to be sent "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 U.S.C. § 227(a)(4) (defining "telephone solicitation"); 47 C.F.R. § 64.1200(f)(15)

(same); *id.* at § 64.1200(f)(13) (defining "telemarketing"); *see also id.* at § 64.1200(c) (prohibiting a "telephone solicitation"); *id.* at § 64.1200(d) (prohibiting "any call for telemarketing purposes"). Defendant's text messages do just that—they encourage the Plaintiff to trade in his used Camry and purchase an upgraded vehicle.

### A. This Court Should Consider the Full Text of the October 29 Message and May Do So Properly.

As a threshold matter, this Court can and should consider the full text of the October 29 Message. On a motion for judgment on the pleadings, the court is not confined complaint—it may also consider the following:

> (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice.

*Dudek v. Thomas & Thomas Att'ys & Couns. at L., LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citing *Whittiker*, 605 F. Supp. 2d at 924–25 (N.D. Ohio 2009); *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999)).

The full text of the October 29 Message fits comfortably within this rule. The Complaint includes screenshots of this message in paragraph twelve (12), so it is clearly incorporated by or referred to in the Complaint. *See* Compl. at ¶ 12. The contents of this message is also central to Plaintiff's allegations because the receipt of unwanted telemarketing messages is the basis of Plaintiff's TCPA claims. *See* 47 C.F.R. §§ 64.1200(c)–(d). Accordingly, these screenshots are part of the pleadings and may properly be considered. *See Whittiker*, 605 F. Supp. 2d at 624–25.

### B. The Complaint Clearly Establishes That the Text Messages Were Sent for Telemarketing Purposes.

Defendant's argument that the texts in the Complaint contain mere offers to buy Plaintiff's Camry ignores that the very first message Plaintiff received, the October 29 Message, asks Plaintiff if he "**would consider upgrading**[.]" Compl. at ¶ 12 (emphasis added). This language is present on the face of the Complaint without even considering the full message.

That said, the complete October 29 Message conveys Defendant's overall purpose in texting Plaintiff. Defendant's salesperson, Jason Albanese, first states that it "looking for used vehicles right now and naturally Camry is always great for us to carry[.]" Compl. at ¶ 12. In the same breath, Defendant says, "**Curious if you would consider upgrading to something newer. I can exchange most of the information via text if that's easier for you**." Clearly, Defendant sent Plaintiff the October 29 Message to encourage him to trade in his used Camry and purchase a newer upgrade from Defendant. This falls squarely within the definitions of "telemarketing" and "telephone solicitation." *See* 47 U.S.C. § 227(a)(4); 47 C.F.R. §§ 64.1200(f)(13), (15).

The October 29 Message sets the tone for those that follow. Indeed, the November 14 Message was also sent by Jason Albanese. Compl. at ¶ 15. There is no reason to believe that Jason Albanese's motive for texting Plaintiff changed, especially after Plaintiff opted out in response to the October 29 Message. *See* Compl. at ¶ 12.

If anything, the November 14 Message reinforces the validity of Plaintiff's TCPA claims. In it, Jason asks Plaintiff, "**May I communicate with you via text?** Reply YES to confirm, or reply STOP at anytime to end." Compl. at ¶ 15 (emphasis added). If Plaintiff consented to receive telemarketing texts and calls from Defendant, Jason would have no reason to ask Plaintiff for permission to send them. And if Defendant had the minimum procedures in place required by 47 C.F.R. § 64.1200(d), Defendant's salespeople would have honored Plaintiff's previous opt-out. They also would have known that the November 14 Message falls short of conferring Plaintiff's

"prior express invitation or permission[.]" *See* 47 C.F.R. § 64.1200(c)(2)(ii) ("[P]rior express invitation or permission . . . must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed[.]").

Finally, the January 30 Message echoes the same purpose—it asks Plaintiff for his "availability for a quick phone call regarding [his] 2018 Camry." *See* Compl. at ¶ 17. This suggests that Defendant's salesperson, Jay, also wanted to encourage Plaintiff to trade in his 2018 Camry and buy an upgraded vehicle.

Defendant's case law is readily distinguishable for this reason: Defendant's messages do not only offer to buy Plaintiff's Camry, they also encourage Plaintiff to purchase a newer, more upgraded vehicle (even after he opted out). The cases Defendant cites involve only offers to purchase the plaintiffs' property, such that the plaintiffs stood to make money and not spend it. Here, however, even if Plaintiff were to trade in his Camry and the sale price went towards the cost of an upgraded vehicle, Plaintiff would still have to pay the difference between the cost of the upgraded vehicle and the trade-in price of his Camry. **He would not ultimately *make* money from this transaction—he would be spending it.** Defendant presents no case law suggesting that an offer to buy coupled with an attempt to induce a more expensive purchase is not a telephone solicitation. *See, e.g., Coffey v. Fast Easy Offer LLC*, No. CV-24-02725-PHX-SPL, 2025 WL 1591302, at *1, *4 (D. Ariz. June 5, 2025) (holding that the defendant home-buyer's messages asking plaintiff if she had given up on selling her home were not telephone solicitations because "even if . . . Plaintiff did not make as much money as she might have made selling her home without [defendant]'s services, she would still be *making* money—and not spending a cent on purchasing any goods or services from Defendants."); *Aussieker v. Aghazadeh*, No. 2:25-cv-0888,

2025 WL 2021040, at *1, *4 (E.D. Cal. July 18, 2025) (finding that defendant's messages asking plaintiff if she was open to options to sell her house are not telephone solicitations and aligning with *Coffey*); *Hulsey v. Peddle, LLC*, No. CV 17-3843, 2017 WL 8180583, at *1, *3 (C.D. Cal. Oct. 23, 2017) (finding messages from "the Peddle bot that will help you get an offer on your '94 Corolla" not telephone solicitations because telephone solicitations refer to "calls encouraging a purchase by the consumer or user, rather than by the caller."); *Jance v. Homerun Offer LLC*, No. CV-20-00482, 2021 WL 3270318, at *1, *4 (D. Ariz. July 30, 2021) ("Here, Plaintiff alleges that the purpose of the calls was to purchase Plaintiff's home, not to induce Plaintiff to make a purchase from the caller."); *Edelsberg v. Vroom, Inc.*, No. 16-cv-62734, 2018 WL 1509136, at *2–8 (S.D. Fla. Mar. 27, 2018) (finding no advertising purpose in message saying, "I saw you listed your Prius online & can make an offer but need you to fill out a few more details," and finding that plaintiff's listing of his phone number and advertisement selling his car to constitute prior express consent).

Defendant's brief omits its attempt to sell Plaintiff "an upgrade" in order to conceal the true purpose behind its messages. This purpose is clear from the face of the Complaint and further supported by the full text of the October 29 Message and the messages that follow. These facts are more than sufficient to render it plausible that Defendant's messages were sent for telemarketing purposes.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court to deny Defendant's Motion for Judgment on the Pleadings.

Dated: December 22, 2025

Respectfully Submitted,

**SHAMIS & GENTILE, P.A.**

*/s/ Andrew Shamis*
Andrew J. Shamis, Esq.

Ohio Bar No. 100846
ashamis@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

*Counsel for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which notifies all counsel of record of this filing.

*/s/ Andrew Shamis*
Andrew J. Shamis, Esq.