UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICK SHAFER, individually and on behalf of all others similarly situated, | ) | CASE NO. 4:25-cv-00941-BMB |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| TOYOTA OF BOARDMAN, | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

Before the Court is Defendant Toyota of Boardman's ("Toyota") Motion for Judgment on the Pleadings. (Doc. No. 13). Plaintiff Rick Shafer ("Shafer") responded in opposition (Doc. 15), and Toyota replied. (Doc. No. 16.) For the following reasons, the Motion is DENIED.

## I. BACKGROUND

### A. Text Messages from Toyota of Boardman

Shafer alleges he received three text messages in a three-month period from Toyota. (Doc. 1 ¶¶ 12-17.) [1] On October 29, 2024, Jason Albanese ("Albanese"), Sales Manager of Toyota, messaged Shafer asking whether he was interested in selling his 2018 Toyota Camry. (*Id.* at ¶ 12.) This message also asked whether Shafer would "consider upgrading" to a newer vehicle. (*Id.*) That same day, Shafer replied "[d]o not call or text me," which Albanese acknowledged with an emoji. (*Id.* at ¶¶ 13-14.)

[1] Citations to the Complaint are to the paragraph number assigned therein.

Two weeks later, on November 14, 2024, Albanese again messaged Shafer asking "[m]ay I communicate with you via text? Reply YES to confirm, or reply STOP at anytime to end." (*Id.* at ¶ 15.) Shafer opted out of text communications by replying "stop," which Albanese acknowledged. (*Id.* at ¶ 16.)

Approximately two and a half months after Shafer opted out of text communications for second time, on January 30, 2025, Shafer received a third message from Toyota asking if he was available "for a quick phone call regarding [his] 2018 Camry." (*Id.* at ¶ 17.)

Shafer's phone number was registered on the National Do Not Call Registry prior to and during all times that he received these messages. (*Id.* at ¶ 34.) He claims he never consented to receiving messages from Toyota and has no ongoing business relationship with them. (*Id.* at ¶¶ 28, 31.) He also alleges Toyota sent these messages to obtain a financial benefit. (*Id.* at ¶ 37.)

**B. Procedural History**

On May 8, 2025, Shafer brought this action on behalf of himself and the Proposed Class alleging violations of the TCPA (Count One), by initiating telephone solicitations to persons on the National Do Not Call Registry (*Id.* at ¶¶ 50-57), and 47 C.F.R. § 64.1200(d) of the TCPA (Count Two), for failing to establish procedures for maintaining a list of persons who request not to receive telemarketing calls. (*Id.* at ¶¶ 58-69.)

On June 16, 2025, Toyota answered. (Doc. 4.) On November 26, 2025, Toyota filed a Motion for Judgement on the Pleadings (the "Motion") pursuant to Rule 12(c), arguing the texts to Shafer do not qualify as "telephone solicitation[s]" within the meaning of the TCPA. (Doc. 13

at 112.)[2] Though the motion seeks judgment on the pleading for all claims asserted in the Complaint, it does not address Count Two. (*See* Doc. 13.)

## II. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion under Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999)).

A complaint must give notice of what the legal claims are and the factual grounds upon which they rest. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Jackson v. Pro. Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). A Rule 12(c) "motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted). "[T]he 'complaint must contain sufficient factual matter, accepted as true, to state a

[2] For ease and consistency, record citations to electronically stamped CM/ECF documents other than the complaint reference the assigned PageID# rather than any internal pagination.

claim to relief that is plausible on its face.'" *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

**B. The Telephone Consumer Protection Act**

In 1991, Congress enacted the TCPA to, in part, "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012) ("Congress reported many consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." (quotations and alterations omitted)). In relevant part, the TCPA prohibits "telephone solicitations" to phone numbers listed on the National Do Not Call Registry. 47 U.S.C. § 227(c)(5) (providing for private right of action); 47 C.F.R. § 64.1200(c)(2). A violation of this provision occurs when a person "has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed . . . ."[3] 47 U.S.C. § 227(c)(5).

A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). Calls or messages expressly excluded from this definition include communications: "(A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit

[3] Toyota argued for the first time in its reply brief that Plaintiff could not identify a second solicitation within the requisite 12-month period. (Doc. 16 at 141-42). Under Sixth Circuit case law, Toyota waived this argument by failing to raise it in the opening brief. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held, however, that arguments made to us for the first time in a reply brief are waived.").

organization." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). "Although the term 'call' is not defined in the TCPA, the Federal Communications Commission (FCC) has ruled explicitly that the statute's prohibitions 'encompass[] both voice calls and text calls to wireless numbers . . . .'" *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015) (citing *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) ("2003 FCC Order"); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016), *as revised* (Feb. 9, 2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii).").

Though not binding on this Court, the Ninth Circuit's opinion in *Coffey v. Fast Easy Offer, LLC*, 178 F.4th 480 (9th Cir. 2026) interpreted the statutory definition of "solicitation" broadly.[4] There, the court held that the relevant inquiry under the statute is whether the purpose of *initiating* the phone call or message—not the purpose of the phone call or message itself—was to encourage "'the purchase or rental of, or investment in, property, goods, or services . . . .'" *Id.*

[4] Toyota's motion, which predated the Ninth Circuit's decision, cited the district court's decision, *Coffey v. Fast Easy Offer LLC*, No. 24-CV-02725, 2025 WL 1591302, 2025 U.S. Dist. LEXIS 106786 (D. Ariz. June 5, 2025). (Doc. 13 at 116-17.) In *Coffey*, a plaintiff on the Do Not Call Registry received several phone calls and text messages from a real estate services company asking whether the plaintiff had "given up" on selling their home. *Coffey*, 2025 U.S. Dist. LEXIS 106786, at *3. The district court concluded that messages were not solicitations under the TCPA because the messages did not encourage the plaintiff "'to engage in future purchasing activity.'" *Id.* at *12 (quoting *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)). But under the circuit court's standard, the complaint should have survived dismissal because it sufficiently pled that the defendant's purpose in initiating the communications was to solicit the purchase of real estate brokerage services. *Coffey*, 178 F.4th at 484.

at 483 (quoting 47 U.S.C. § 227(a)(4)). In the Ninth Circuit's view, reading "for the purpose of" as modifying "telephone call or message" would render "the initiation of" superfluous. *Id.*

The parties only dispute whether Toyota's text messages were "telephone solicitation[s]" as defined by the TCPA. Toyota asserts that their text messages are not solicitations under the TCPA because they contacted Shafer to buy his Camry, not to sell a product. (Doc. 13 at 112.) Shafer argues the plain text of Toyota's first message makes it a telephone solicitation because the agent asked whether Shafer would consider upgrading to a newer vehicle. (Doc. 15 at 127.) This first message "color[ed] every message" he later received from Toyota, although his second message from Toyota only asked whether he was amenable to communications via text. (*Id.* at 128.) The third message he received asked if he was willing to talk over the phone regarding his Camry.

### C. Analysis

Albanese's text message asked whether Shafer "would consider upgrading [his Camry] to something newer." (Doc. 1 at ¶ 12; Doc. 15 at 130.) Shafer views an upgrade request as "fall[ing] squarely within the definitions of 'telemarketing' and 'telephone solicitation' under the TCPA." (*Id.* at 133.) Toyota contends that this first message is not a telephone solicitation because the TCPA does not cover "attenuated" communications, meaning those that "may ultimately lead to a future purchase by the recipient." (Doc. 16 at 138.)

Citing *Edelsberg v. Vroom, Inc.*, No. 16-CV-62734, 2018 WL 1509135, 2018 U.S. Dist. LEXIS 50420 (S.D. Fla. Mar. 27, 2018) ("*Vroom*"), Toyota argues "communications that merely include collateral opportunities to purchase something from the caller" do not rise to the level of TCPA violations. (Doc. 16 at 136 (citing *Vroom*, 2018 U.S. Dist. LEXIS 50420, at *16).) The

plaintiff advertised his Toyota Prius on Craigslist and subsequently received a text message from Vroom. *Vroom*, 2018 U.S. Dist. LEXIS 50420, at *5. This message stated that Vroom saw Edelsberg's advertisement, was willing to make an offer on his vehicle, but requested he provide additional details about the vehicle by accessing an attached link. *Id.* The court found Vroom's text message did not violate the TCPA because it did not constitute a "dual purpose" call under FCC regulations. *Id.* at *11. Instead, the purpose of the message was only "to direct Edelsberg to a page on its website for him to enter information that would facilitate Vroom's ability to purchase his car." *Id.* at *13.

The court relied on 2003 FCC guidance concerning "dual purpose" calls:

> The so-called "dual purpose" calls described in the record—calls from mortgage brokers to their clients notifying them of lower interest rates, calls from phone companies to customers regarding new calling plans, or calls from credit card companies offering overdraft protection to existing customers—would, in most instances, constitute "unsolicited advertisements," regardless of the customer service element to the call. The Commission explained in the *2002 Notice* that such messages may inquire about a customer's satisfaction with a product already purchased, but are motivated in part by the desire to ultimately sell additional goods or services. If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement.

2003 FCC Order, at 14098-99 ¶ 142. Because "the opportunity to purchase something from the caller [was] too attenuated from the purpose of the initial communication," there was no TCPA violation. *Vroom*, 2018 U.S. Dist. LEXIS 50420, at *17.

Given the allegations here, Toyota's reliance on *Vroom* is misplaced. Toyota's first text message appears to serve a "dual purpose," likely "motivated in part by the desire to ultimately sell additional goods and services." 2003 FCC Order, at 14098-99 ¶ 142. Asking whether Shafer "would consider upgrading to something newer" suggests purchasing another Toyota.

(Doc. 1 at ¶ 12; Doc. 15 at 130.) This communication is akin to a notice of overdraft protection or new calling plans, which the FCC views as solicitations. 2003 FCC Order, at 14098-99 ¶ 142. While not explicit, they are designed to engage a potential customer in a commercial transaction. That this message was sent by Toyota's Sales Manager supports Toyota's purpose was, in part, to prompt a transaction with Shafer. (Doc. 1 at ¶ 12.) In most instances, dual purpose calls constitute "unsolicited advertisements" that violate the TCPA. 2003 FCC Order, at 14098-99 ¶ 142.; *see also Savett v. Anthem, Inc.*, No. 1:18-CV-274, 2019 WL 5696973, 2019 U.S. Dist. LEXIS 190955, at *17 (N.D. Ohio Nov. 4, 2019) ("According to the FCC, such dual purpose calls are prohibited under the TCPA."); 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(c)(2).

Limited case law exists on dual purpose calls. *See Chesbro*, 705 F.3d at 917 ("The FCC has determined that so-called 'dual purpose' calls, those with both a customer service or informational component as well as a marketing component, are prohibited."); *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024) ("As courts have recognized, '[t]ext messages constitute a telephone solicitation even if the text message 'serves a dual purpose—that is, includes both advertising/telemarketing and merely informational or transactional communications.'") (quoting *Vallianos v. Schultz*, No. 19-CV-0464, 2019 U.S. Dist. LEXIS 174729, 2019 WL 4980649, *3 (W.D. Wash. 2019)). But on a motion for judgment on the pleadings, the movant must demonstrate that, as a matter of law, the messages did not violate the TCPA. *See Pro. Radiology Inc.*, 864 F.3d at 466. TCPA claims are generally not dismissed at this stage of litigation because more information is required to determine whether messages are telephone solicitations. *See Less v. Quest Diagnostics Inc.*, 515 F. Supp. 3d 715, 717 (N.D. Ohio 2021) ("More information is needed to determine whether the calls in this case were solicitations

under the statute."); *Cranor v. MedUS, Inc.*, No. 1:23-CV-724, 2025 WL 841476, 2025 U.S. Dist. LEXIS 49514, at *8 (S.D. Ohio Mar. 18, 2025) ("[C]ourts have been wary to dismiss TCPA claims at this early stage for similar reasons on an undeveloped record."); *Fiorarancio v. WellCare Health Plans, Inc.*, No. 21-CV-14614, 2022 WL 111062, 2022 U.S. Dist. LEXIS 5297, at *9-10 (D.N.J. Jan. 11, 2022) ("The purpose of Defendant's calls will only be clear after the parties (and the Court) learn more about why they were made."); *Eden Day Spa, Inc. v. Loskove*, No. 14-CV-81340, 2015 WL 1649967, 2015 U.S. Dist. LEXIS 48893, at *6-7 (S.D. Fla. Apr. 14, 2015) (denying motion to dismiss when analysis of TCPA claim would "require an inquiry that goes beyond the four corners of the Complaint"); *Moonsawmy*, 2024 U.S. Dist. LEXIS 246877, at *6 ("[W]hether the messages offering to purchase Plaintiff's home were TCPA-prohibited solicitations depends on details about Defendant's business, which are not available without discovery."); *Wilcox v. MarketPro S., Inc.*, No. 23-CV-2364, 2023 WL 8806696, 2023 U.S. Dist. LEXIS 226347, at *8-9 (D. Md. Dec. 20, 2023) (same).

Toyota's first message certainly appears to serve a dual purpose. The fact that the same sales manager sent the second message and Toyota sent all three messages in a close timeframe calls into question the purpose for sending the subsequent messages. As pleaded, more information is required before the Court can grant judgment in Toyota's favor as a matter of law.

**III. CONCLUSION**

For the reasons stated herein, Toyota's Motion for Judgment on the Pleadings (Doc. 13) is DENIED.

**IT IS SO ORDERED.**

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

**Date**: September 21, 2026